CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 12 2017

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DAVID CRAWLEY,<br>　　Plaintiff, | ) ) ) ) | Civil Action No. 7:15-cv-00647 |
| v. | ) ) | **MEMORANDUM OPINION** |
| J. MICHAEL PARSONS, et al.,<br>　　Defendants. | ) ) ) | By:　Hon. Michael F. Urbanski<br>　　　Chief United States District Judge |

| | | |
|---|---|---|
| DAVID CRAWLEY,<br>　　Plaintiff, | ) ) ) ) | Civil Action No. 7:16-cv-00211 |
| v. | ) ) | **MEMORANDUM OPINION** |
| MR. MITCHELL, et al.,<br>　　Defendants. | ) ) ) | By:　Hon. Michael F. Urbanski<br>　　　Chief United States District Judge |

David Crawley, a Virginia inmate and an adherent of the House of Yahweh faith, filed these actions pro se under 42 U.S.C. § 1983. The remaining defendant in case 7:15-cv-00647 is Chaplain Mitchell of the Wallens Ridge State Prison ("WRSP"), and the defendants in case 7:16-cv-00211 are Chaplain Mitchell; Leslie Fleming, the Warden of WRSP; Henry Ponton, a Virginia Department of Corrections ("VDOC") Regional Administrator; and David Robinson, the VDOC's Chief of Corrections Operations.[1] Plaintiff alleges that these defendants violated the First and Fourteenth Amendments of the United States Constitution by preventing his

---

[1] Plaintiff had also commenced a third action about the same subject matter against many of the same defendants in Crawley v. Robinson, et al., No. 7:15-cv-00648. Robinson, Fleming, and an Institutional Programs Manager ("IPM") were named as defendants in 7:15-cv-00648 but not Chaplain Mitchell. By a memorandum opinion and order entered in 7:15-cv-00648, the court concluded that Robinson, Fleming, and the IPM were entitled to summary judgment. By the same memorandum opinion and order that was also entered in 7:15-cv-00647, the court concluded that Ponton was also entitled to summary judgment. Thus, the court has already granted summary judgment to Robinson, Fleming, and Ponton in 7:15-cv-00647 and 7:15-cv-00648 for the same claims alleged against them again in 7:16-cv-00211. Nevertheless, 7:15-cv-00647 remained pending against Chaplain Mitchell.

participation in the prison's observances of Passover in April 2015 and the Feast of Tabernacles in September 2015.[2]

These two cases are ripe for the court's review to adjudicate Chaplain Mitchell's supplemental motion for summary judgment in case 7:15-cv-00647 and Chaplain Mitchell, Fleming, Ponton, and Robinson's first motion for summary judgment in case 7:16-cv-00211.

In accordance with the court's prior memorandum opinion entered in cases 7:15-cv-00647 and 7:15-cv-00648, Fleming, Ponton, and Robinson are entitled to qualified immunity and summary judgment for all claims against them. Further, all defendants are entitled to qualified immunity and summary judgment about the Feast of Tabernacles. However, the claims about Passover against Chaplain Mitchell shall proceed to jury trial.

I.

A.   7:15-cv-00647

The court previously had granted summary judgment to defendants Parsons, Ponton, and Fleming in case 7:15-cv-00647 because they had not violated a federal right, leaving Chaplain Mitchell as the only remaining defendant. Plaintiff claims that Chaplain Mitchell refused to honor his requests that he be included on the 2015 Passover list in accordance with policy, which prevented Plaintiff from receiving Passover meals or making Passover-related commissary purchases.

On April 9, 2015, Plaintiff filed an informal complaint, stating:

> In the month of Mar[ch] 2015 and April 3rd through 10th, 2015, I was discriminated against and arbitrarily deprive[d] of my right to freely exercise religious beliefs because of my chosen faith, Yahweh. After sending

---

[2] Plaintiff did not identify the Feast of Tabernacles in the complaint but instead called it the "follow-up feast." He also called it the "make-up" Passover feast in administrative grievances. After defendants filed a motion for summary judgment, Plaintiff clarified that references to the "follow-up" or "make-up" feast meant the Feast of Tabernacles in September 2015.

2

approx[imately] 12 request[s] to the Chaplain (Mitchell) between Aug[ust] 2014 through Mar[ch] 2015, and two E-mails from my counselor[,] Rose, all instructing the Chapl[a]in to add my name to the Yahweh's PASSOVER list. I, nor my counselor[,] received a reply. Therefore in Mar[ch] 2015 I was denied my religious privileges to order Kosher items attached to the Yahweh Passover celebration and not permitted to participate in my religious faith celebrated Passover meal after complying with [Operating Procedure ("OP")] 841.3[].

Defendant Chaplain Mitchell responded on April 13, 2015, after Passover ended, writing, "Sorry, you were not on the List."

Plaintiff filed a regular grievance, writing:

> The reason my name isn't on the list to participate in ... Passover [is because] the Chapl[a]in at WRSP fails to answer request or emails, and fails to acknowledge my religion as suitable to worship. This Chapl[a]in doesn't provide literature for Yahweh worshipers, nor ever make rounds in the segregation units so any offender can make inquiries about religious matters.
>
> His failure to follow any policy is solely the reason I was arbitrarily deprived of participating in ... Passover, and why also Mar[ch] 2015 I was subject to discrimination when denied my right to order Passover items.

Warden Fleming deemed the grievance "unfounded," and Plaintiff alleged in the appeal of the regular grievance:

> On [December 29, 2014] and [March 16, 2015] I had Counselor Rose send emails specifically informing [Chaplain] Mitchell to add my name to the Passover list because ... Chaplain Mitchell was refusing to respond to my request. Per 841.3 4.) Procedure, A. Access to Religious Services, 5.-K. on page 4, it states the Chaplain will be provided a computer and all standard office supplies in order to carry out their [sic] duties. Therefore, [is] Counselor Rose also lying about sending E-mails, or are you now going to say the Chaplain wasn't provided a comput[e]r[?] You can contact Counselor Rose about my efforts and his E-mails to the Chaplain about the Passover.

Ponton upheld Warden Fleming's decision, noting Plaintiff's claim could not be substantiated.

The VDOC issued Memorandum #04-2015 on January 26, 2015, about the VDOC's Passover observance scheduled in April 2015 (the "Passover Memorandum"). The Passover Memorandum described the programming and regulations for "Jewish, Messianic Jewish,

3

Yahwist/House of Yahweh and Philadelphia Church of God [inmates] who are on the pass list for these religions" and want to participate in Passover holiday. The Passover Memorandum required inmates "desiring to observe Passover [to] make their intentions known in writing, including which meal plan they desire, to the [Warden] or designee at least 30 days prior to the beginning of Passover." The inmates who signed up via the Warden or designee were also allowed to buy certain "Kosher for Passover" foods from the commissary. Inmates who already were receiving Common Fare and had signed up for Passover would also receive the special Passover meal.

The Passover Memorandum was forwarded to Chaplain Mitchell, who issued his own memo to inmates on January 29, 2015, informing them of the Passover services' dates and times. Copies of both memos were to be posted in the housing units, and the two memos, the sign-up forms, and commissary order forms were to be given to Housing Unit Managers. Treatment counselors were told to distribute the forms to inmates and maintain copies of the inmates' completed participation request forms. The Secretary of Treatment was required to maintain the list of inmates who filed participation forms and then forward the list to the Chaplain. Inmates were not required to be on a Master Pass List to order kosher for Passover foods from the commissary.

Chaplain Mitchell avers that he handed out the Passover sign-up forms to inmates in segregation, like Plaintiff, and that WRSP inmates could send completed request forms to their counselors, to the prison's Institutional Programs Manager, or to him directly. The prison's Institutional Programs Manager avers that she has reviewed all documents available to her and did not find a request form by Plaintiff to participate in Passover or to order Kosher for Passover foods. Chaplain Mitchell avers that he did not receive a request from Plaintiff to participate in

4

the Passover observance. Chaplain Mitchell notes that he would send the inmate a form to complete when he would receive the inmate's request and that he would add that inmate's name to the Passover participation list once he received the inmate's completed form. Chaplain Mitchell also avers that he has no involvement with request forms for commissary orders.

B.   7:16-cv-00211

Case 7:16-cv-00211 again litigates claims about 2015 Passover observance against Chaplain Mitchell, Fleming, Ponton, and Robinson and is merely derivative of cases 7:15-cv-00647 and 7:15-cv-00648. The only notable difference between these cases is a single reference to the Feast of Tabernacles in September 2015.

Robinson issued a Memorandum on June 12, 2015, titled, "Third Quarter 2015 Religious Holy Days" (the "Third Quarter Memo"), "in order to assure a standardized and uniform policy . . . relative to the Third Quarter 2015 religious holy days for Muslim, Nation of Islam, Moorish Science Temple, Rastafarian, Jewish, Messianic Jewish, Yahwist, [and] Philadelphia Church of God offenders who are on the pass list for these religions." The Third Quarter Memo did authorize special services for Yahwist and other Jewish inmates to celebrate, inter alia, the Feast of Tabernacles, but the Third Quarter Memo did not authorize any special meal for that Jewish holiday. Plaintiff alleges he was unable to participate in the Feast of Tabernacles because WRSP Food Services received a participation list from the Chaplain that did not include his name.

Plaintiff filed an informal complaint on September 25, 2015, writing, "In the month of Sept[ember] 2015 I was arbitrarily denied my [First] Amendment right to freely exercise my religion as a Yahwist[]. I was not provided the <u>Passover follow up feast tray</u> as the other Jews at WRSP, which subjects me to discrimination as well." A non-defendant responded, noting food

5

service relied on the participant list provided by the Chaplain and that Plaintiff's name was not on the list.

Plaintiff filed a regular grievance about the Passover list, not the "Passover follow up feast tray" identified in the informal complaint:

> Chaplain Mitchell has arbitrarily refuse[d] to add my name <u>to the Passover list</u>. I have went through the grievance regarding being a Yahwist (House of Yahweh) several times. Grievance #00266 and 00289, along with a number of request[s], and still I'm being denied my [First] Amendment right to freely exercise my religious practice Passover feast.

Warden Fleming deemed the grievance about the Passover list unfounded, noting:

> An investigation into your complaint indicates Pass lists and Program Sign-In Sheets are essential to maintain offender accountability and shall be used to control and document participation in all religious services and programs. Chaplain Mitchell reports records show you are not enrolled in any religious service. You were not on the list for a feast tray.

Plaintiff appealed unsuccessfully on November 4, 2015, alleging:

> The Warden investigation were [sic] fake. <u>WRSP doesn't provide services for my religion, Yahwist. Therefore, there's no service for me to attend.</u> . . . Also, a settlement on 7/29/14 stated by Attorney General and signed, saying everyone at WRSP would be informed that I'm Yahwist. So why after 4 grievances and a lawsuit settlement, my name still hasn't been placed on this list that states I'm a Yahwist.

Ponton upheld Warden Fleming's determination on December 23, 2015.

The rest of the claims in case 7:16-cv-00211 are merely derivative of cases 7:15-cv-00647 and 7:15-cv-00648. Plaintiff complains that Warden Fleming was "informed beforehand" that Chaplain Mitchell was refusing to put him on the Passover list and did nothing to intervene. Plaintiff complains that Ponton did not require WRSP to allow Plaintiff to order Passover items from an outside vendor, making Ponton a participant in the First Amendment violation. None of the grievances in the record suggests Fleming's and Ponton's personal involvement before Passover ended or Robinson's personal involvement at any time.

## II.

Defendants filed motions for summary judgment, arguing that they are entitled to qualified immunity. Qualified immunity permits "government officials performing discretionary functions . . . [to be] shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992) (discussing the requisite level of analysis of the right). The First Amendment's Free Exercise Clause protects prisoners from unreasonable burdens on a sincerely-held religious exercise. See, e.g., O'Lone v. Estate of Shabazz, 482 U.S. 342, 348-49 (1987); Turner v. Safley, 482 U.S. 78, 89 (1987). The Fourteenth Amendment's Equal Protection Clause protects prisoners from invidious discrimination. See, e.g., Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

A party is entitled to summary judgment if the pleadings, the disclosed materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id.

## III.

A. Claims in case 7:16-cv-00211 about the Feast of Tabernacles

For a First Amendment free-exercise claim, a court must decide the threshold question of whether a plaintiff sincerely held the avowed belief and whether the belief is, in a plaintiff's own

7

scheme of things, religious. United States v. Seeger, 380 U.S. 163, 185 (1965). Only a personal practice that is both sincerely held and rooted in religious belief is protected. Wisconsin v. Yoder, 406 U.S. 205, 215-16 (1972).

Plaintiff fails to establish a sincerely-held religious need to observe the Feast of Tabernacles in September 2015. The fact other inmates who adhere to Jewish faiths participated in that celebration does not establish Plaintiff's individual, sincere, and religious need to celebrate that holiday, too. See, e.g., Thomas v. Review Bd. of Indiana Employment Security Div., 450 U.S. 707, 715-716 (1981) (recognizing a court should not impute a particular religious need common to a religious sect to a person who may identify with that sect); see also 42 U.S.C. § 2000cc-5 (recognizing an individual religious practice is not defined by the practices of others in the context of the Religious Land Use and Institutionalized Persons Act).

Furthermore, Plaintiff fails to establish how not participating in the Feast of Tabernacles in September 2015 constituted a substantial burden. A "substantial burden" on religious exercise occurs if it "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs, or . . . forces a person to choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (internal quotations omitted). For that holiday, the Third Quarter Memo allowed Jewish inmates to be excused "from work, school and programs, and they should be afforded time for prayer and study (individual) during the entire period. No special meals. Service authorized, Day 1 and/or 2, . . . and no services days 3-7." Thus, Plaintiff was not deprived of a special meal because none was offered. Furthermore, Plaintiff acknowledged in his grievance appeal on November 4, 2015, that there was no master pass list for Yahwists because there were no group House of

Yahweh services. Plaintiff fails to establish how not participating, as a Yahwist, in a group religious service with non-Yahwists constituted a substantial burden to his personal religious practice. Moreover, Plaintiff does not claim that during the Feast of Tabernacles he was prevented from individual prayer and study or was compelled either to work or to participate in school or programs.

In sum, Plaintiff fails to describe a sincerely-held religious need to observe the Feast of Tabernacles and fails to explain how not participating with inmates of other faiths during the holiday constituted a substantial burden to his faith. Accordingly, Defendants are entitled to qualified immunity and summary judgment for the claim about the Feast of Tabernacles in case 7:16-cv-00211.

B. Remaining claims in case 7:16-cv-00211 against Fleming, Ponton, and Robinson

Plaintiff accuses Fleming, Ponton, and Robinson of violating the Free Exercise Clause of the First Amendment and Equal Protection Clause of the Fourteenth Amendment by not allowing him to participate in the VDOC's Passover observance in April 2015 although inmates of other Jewish faiths participated. On March 14, 2017, the court granted the motion for summary judgment about these same claims against defendants Fleming and Ponton in case 7:15-cv-00647 and against defendants Fleming and Robinson in case 7:15-cv-00648. The court finds that the grant of summary judgment in favor of Fleming, Ponton, and Robinson in those cases is equally warranted in case 7:16-cv-00211.

There is nothing in the record to suggest that Fleming, Ponton, or Robinson had any personal involvement about whether Plaintiff would be authorized to participate in Passover or the Feast of Tabernacles. In fact, Plaintiff's grievances squarely place the blame on Chaplain Mitchell and no one else. Plaintiff's passing references to complaints he made to Fleming and

9

Ponton are insufficient to impose § 1983 liability on them. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). These prison administrators may not be held vicariously liable under § 1983 for failings of other prison staff, such as the claimed failure of Chaplain Mitchell to respond to Counselor Rose's emails, which Plaintiff claims caused him not to be included on the 2015 Passover list. Id. ("[B]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead each Government-official defendant, through the official's own individual actions, has violated the Constitution.").[3] In sum, Plaintiff has no actionable claim against Fleming, Ponton, or Robinson, and they are entitled to qualified immunity and summary judgment.

C. Remaining claims in cases 7:16-cv-00211 and 7:15-cv-00647 against Chaplain Mitchell about Passover in April 2015

In case 7:15-cv-00647, the court had denied Chaplain Mitchell's motion for summary judgment because further factual development was necessary after comparing Plaintiff's allegations to Chaplain Mitchell's affidavit. Chaplain Mitchell had filed an affidavit stating, "I keep copies of all offender requests regarding participation in holiday observances. I did not receive any request forms concerning Crawley participating in Passover 2015." Plaintiff countered that he submitted offender requests to Counselor Rose asking that he be included on the Passover list. According to documents produced by Plaintiff opposing the motion for summary judgment, Counselor Rose purportedly sent emails to Chaplain Mitchell stating that Plaintiff wanted to sign up for Passover.

---

[3] Further, to the extent that Plaintiff's claim against Fleming or Ponton relies on their responses to his after-the-fact grievances, it is unavailing. Plaintiff has "no constitutional right to participate in grievance proceedings." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Likewise, "there is no liability under § 1983 for a prison administrator's response to a grievance or appeal." Brown v. Va. Dep't of Corr., No. 6:07cv33, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009). Fleming's and Ponton's "after-the-fact denial of a grievance falls far short of establishing § 1983 liability." DePaola v. Ray, No. 7:12cv139, 2013 WL 4451236, at *8 (W.D. Va. July 22, 2013) (Sargent, M.J.) (citing Brooks v Beard, 167 F. App'x 923, 925 (3rd Cir. 2006)).

After considering this evidence, the court concluded that Plaintiff's claim against Chaplain Mitchell amounted to more than bare assertions given the genuine issue of fact disputed by the parties. The court cited Plaintiff's requests to be placed on the Passover list as bolstering his claim of discrimination beyond the realm of mere conclusory accusations. Regarding Chaplain Mitchell's averment that Plaintiff did not ask to receive Passover meals, the court further concluded that the disputed question of whether Chaplain Mitchell did or did not receive Plaintiff's request is inappropriate for resolution on summary judgment. The court noted lastly that the case would proceed to jury trial if Chaplain Mitchell did not file a supplemental motion for summary judgment.

Although Chaplain Mitchell filed that supplemental motion and attached his second affidavit, the second affidavit is largely unchanged from his first affidavit. The only pertinent additions are the following statements:

> If Crawley sent request forms, I would have added him to the list. . . . I do not recall receiving an email from Counselor Rose regarding Crawley's request for Passover. I no longer have access to my 2015 emails. Even if Counselor Rose emailed me, VDOC policy would have required Crawley to send in a request form to me, which he did not do. . . . As a Chaplain, I do not search out ways to deny prisoners from taking part in religious programming. I did not intentionally prevent Crawley from participating in Passover 2016.

The record is not materially different now with the second affidavit as compared to when the court said the legal and factual issues were improper for resolution on summary judgment based on the first affidavit. For the reasons already stated in the court's prior memorandum opinion and order, a dispute of material fact precludes summary judgment as to whether Chaplain Mitchell violated the First Amendment's Free Exercise Clause and the Fourteenth Amendment's Equal Protection Clause by not allegedly processing Plaintiff's purported application to participate in Passover in April 2015. In accordance with the court's prior

11

decision, Chaplain Mitchell is not entitled to qualified immunity and summary judgment for claims about Passover in April 2015. The remaining claims against Chaplain Mitchell from cases 7:15-cv-00647 and 7:16-cv-00211 will be consolidated for trial pursuant to Federal Rule of Civil Procedure 42(a).

## IV.

For the foregoing reasons, the court denies Defendants' motions for summary judgment as to the First and Fourteenth Amendment claims against Chaplain Mitchell about Passover in April 2015 but grants the motions in all other respects. The remaining claims against Chaplain Mitchell are consolidated for trial in the Big Stone Gap Division.

ENTER: This 12 day of July, 2017.

/s/ Michael F. Urbanski
Chief United States District Judge